Good morning. Our first case this morning is BORMES v. United States. Mr. Jacobs? May I speak to the court? The court below found that there was no jurisdiction under THEPRA. It did not even analyze jurisdiction under the Lou Tucker Act. The court found the argument of the government persuasive that section 1681U of THEPRA provides specifically by name for liability on the part of the government. Sub I of 1681U. And since in 1681N it didn't say the United States government by name, he said no, there's no jurisdiction, there's no waiver of immunity. There's no argument that THEPRA says it applies to any person and person includes any government. Does the word print cover a computer display? Absolutely, Your Honor. Absolutely. And the government printed head of the GPO has acknowledged that. The position of the government in this case is that Congress intended to exempt e-commerce from the reach of THEPRA. When it is probably right now e-commerce is probably the most fertile field for identity theft that there is in our country. Yes, but we're not looking at right now, we're looking at 2003 and that may not have been the case in 2003 when Congress enacted this. I believe it was, Your Honor. It's certainly a growing trend and I believe you interpret things currently. What? You're going to suggest that as a matter of statutory interpretation we're to apply modern day definitions and not the definition intact at the time the statute was enacted? Under what precedent would you tell me that's our law? I believe that to be correct. I can't give you a case at the moment, I will. But I want to come back to 59681U because I think it's very important. The government only referred to 1681UI which dealt with damages if you give information to the FBI pursuant to a special request and then it is misused. That statute refers them to the liability of the agency or department of the United States because those are the only ones who would have that information. It's a strict liability statute unlike 1681N. It just says if you violate it, no will on this is required. It's a $100 limitation, not $100 to $1,000. It's strictly limited. And then there's another section to 1681U that doesn't get discussed and that is sub L which provides... Counsel, can I have you back up? Did you say there's no willfulness requirement for the Fair Credit Reporting Act? No, I said for this specific violation, 1681U, there is not a willfulness requirement. That's the difference. This is the FBI thing. I guess I'm not following you. Under 1681 where it says NA or A, any person who willfully fails to comply with any requirement imposed under this sub chapter to any consumer is liable. That consumer and the amount equal to and that's where it has the $100 and not more than $1,000. Am I somehow looking at the wrong section of the statute? No, you're not. You're looking at the right section and that's what we say applies. It says any person and then... Who willfully fails. That's right. So you have to be able to establish willfulness by the government in order to prevail. Absolutely. But I'm talking about 1681U that the court below relied on and that the government says is the only liability that the government has. And because it's clear, it says the United States agency or department of the United States, 1681U sub I is what they pointed to and what the court below pointed to to conclude that there was not a waiver of jurisdiction. And what I would submit to the court is if you then go to sub L of 1681U. Maybe go back to Judge Rader's question though and explain in a little more detail why the word print should include a computer screen. Because it fits every definition, every dictionary definition and every common sense definition of the term. It is an impression. It is, I think we addressed this at 27 or 28, an image. Indeed, as the head of the GPO says, there's a fourth definition. The definition is an image on a computer screen. That's explicitly in the dictionary. And in context, and I believe that's what you have to do, you have to interpret this in context. In the context of e-commerce, what makes sense? And I would submit to your honor that it makes sense that it's on a computer screen. You rely on this government printing office statement, but it kind of indicates surprise that this might be the result, doesn't it? Lo and behold, it's going to perhaps even apply to computer screens? I believe he phrases it, your honor. It's almost, there's a skepticism in the comment, isn't there? Oh, I didn't think so. I thought it was for dramatic effect. But Webster's, we quote on page 25, to display on the surface as a computer screen for viewing. The word print from the jargon file to output, even if to a screen, go to your computer and it will say print to screen. And the important thing is the statute says any receipt. It didn't say any paper receipt. It said this applies to electronic receipts and does not apply to imprinted ones, handwritten ones, or copied ones. Now it didn't say, and it doesn't apply to computers. Instead it said it applies to every receipt. It really says point at the point of sale. And isn't that another difference that we need to think about in terms of the purpose of the statute when it was initially enacted? And with the legislative history talking about thieves going through the garbage and the paper that's been discarded. And when they say point of sale, that's quite significant, is it not? An electronic receipt is not at the point of sale. Well, your honor, it's interesting. Two courts have addressed that issue, and they both come out our way. The point of sale is the electronic. But here we are. Now we're addressing it. And what I would submit to your honor is it did not say that the receipt must be handed or handed or given to the consumer. But it does say receipt at point of sale. And the point of sale in an electronic, in e-commerce, the point of sale is the computer, is the internet. That is the point of sale. That's the whole point, your honor. Well, we need to decipher at what stage when the statute was first enacted it was before so much business was done electronically. We need to decipher the intent in view of the uncertainty as to how it applies. Your honor, I would submit that if you want to look at the intent, which was to avoid identity theft, there is no way I would submit to interpret this so as to exclude e-commerce and make that consistent with the intent of Congress to protect identity theft. As Congress has acknowledged, internet now is the equivalent of dumpster diving. That's what they do. They go on the internet. They hack. Even pay.gov says be careful sending information because it could get intercepted. It is inconsistent, I would submit, with the intent of the statute to simply exclude this vast area of commerce and leave people without the protections. If I might, I think it's a significant point that I really want to make sure I've made if I do nothing else today, and that is with regard to 1681U. There's a sub L that is a limitation of remedies, and it says notwithstanding any other provision of this subchapter, the remedies and sanctions set forth in this section shall be the only judicial remedies and sanctions for violation of this section. There would be no need for that if there weren't liability under 1681N. There would be no need for this limitation. This seems to me to be the clearest indication you could have that there is liability of the government, just like the statute says. Who is liable here actually? The federal government agencies and departments. Who though? Which one? Whoever violates these provisions. Do you have to be specific as to who is violated? I don't think so, Your Honor. I mean, you've got pay.gov is the one that has posted this on a screen. That's not under the control of the district court that was involved in this at all, is it? I'm wondering where the liability actually lies. Oh, you're talking now in our claim. I thought you were talking about 1681U. No, I think I'm talking about your claim. Okay. Your Honor, page A17 of the appendix, paragraph 16 of our complaint sets forth the various specific agencies that use pay.gov and issue these receipts without proper truncation. Is that responsive? And they have willfully done something wrong? Yes. Yes. They are the They don't even control the site. They use the site. Your Honor. Sounds like you might have a 12B6 problem even if you make it by the jurisdiction, right? I don't believe so, Your Honor. I think we're entitled. We have alleged they knowingly violated. This is the United States government. They are the one that passed the statute. They are the one who sent out all these warnings saying you've got to do all this truncation or you will be exposed. They can't plead ignorant. And we have alleged they knowingly violated it and we are prepared to prove it, but right now the record is not developed in that regard. Okay. I'm down to my last two minutes. Okay. You can save that and we'll hear from Mr. Whitaker. May it please the court, Henry Whitaker on behalf of the United States. I know there's a question about this court's appellate jurisdiction, but I did, with the court's permission, want to first address whether FCRA itself imposes liability on the United States. And the plaintiff's submission is that you can basically plug in to FCRA every single place the term person appears and put the term government. And with respect, that cannot be the case for several reasons. First of all, FCRA imposes criminal liability on persons and it cannot be, as the Supreme Court made clear in United States v. Cooper, that Congress imposed in so casual a manner criminal liability on the United States. Second, the Fair Credit Reporting Act permits state governments to seek remedies against persons. And it is most implausible that Congress intended to permit a state government to come into court and hail federal government in. Well, counsel, what would be the point of the definitional section in 1681A, then? It says the term person means any individual, partnership, blah, blah, blah, government or governmental subdivision or agency or other entity. So you would like us to read out of the explicit definitional portion of this statute the words that you don't like, that you say don't comport with, you know, criminal sanction impositions and things like that, but nonetheless the statute has them. Not at all, Your Honor. That's not at all what our position implies. And apart from the civil liability provisions of FCRA, plaintiffs are relying here today, in particular 1681N, the statute in a variety of other places does use the term person. And we are not disputing that, at least in some of those instances, the term person may well refer to, refers to governments. So sometimes when the statute used the word person it refers to the government and sometimes when it used the word person it doesn't refer to the government. Exactly, Your Honor. I think that's the only reasonable reading of the statute. Really? Yeah, I do. I think the word has two different meanings depending on which section you look at. Well, Your Honor, the Supreme Court has recognized that you're quite right, Your Honor, that ordinarily you interpret the same word in the statute to mean the same thing. Well, especially when it's been defined that way, right? This isn't even a question of us interpreting it. There's an express definitional section. Well, there is, Your Honor. That definition, with respect, cannot, for the reasons I've said, control all uses of that term. And the Supreme Court had this issue, Your Honor, in the Department of Public Health case in 1973 where the question was whether Congress abrogated state sovereign immunity by defining the term employer to include state hospital based on the pre-existing use of that term in the Fair Labor Standards Act, employer. Has the Supreme Court ever held that an employee within the government can't be criminally sanctioned if they're found guilty of violating a statute that would apply criminal penalties? I don't believe the Supreme Court has ever held that would be impermissible, but I think that you would require something far more clear than what Congress has done here. And I do think that in the Department of Public Health case in 1973, the Supreme Court employed exactly the method of reasoning that we're asking the court to apply to the Fair Credit Reporting Act, namely that the mere fact that Congress enacts a term that might be interpreted in tandem with some pre-existing provision to waive immunity, that in and of itself is not a sufficiently clear statement. So you're saying that when Congress passed a statute which says person means government or governmental subdivision or agency, that Congress didn't know what it was doing? No, Your Honor. I think that what we're saying is that Congress did not necessarily intend that the subsequent amendment added to the statute many years later in 1996 in an enactment that did a variety of things to the Fair Credit Reporting Act, not just change the civil liability provisions, but also change the statute to apply to businesses. Now then, where did they amend the statute saying it no longer includes government or governmental entity? Your Honor, in those amendments, there was no indication that Congress intended to impose new and significant liability on the federal government. And what that would mean, Your Honor, and this is another point, is that Congress, mere months after the Supreme Court held it unconstitutional in the Seminole Tribe case, that would mean that, of course, there would be no distinction between state and federal governments. But this isn't a case about state government. We're not being asked to construe this term in light of potential application to state government. Well, I think you are, Your Honor, because the necessary implication of the plaintiff's position that the term government includes sovereigns, I think, would necessarily imply that it would include the state sovereign. And that would mean that Congress did something unconstitutional. Well, why couldn't Congress simply be implying the federal government here and not state governments in light of the Supreme Court precedent? Well, I think that the definition, Your Honor, does not distinguish between. It just says government. It doesn't distinguish between. But you would like us to say that because they can't include state governments, they're used to the word government. There's no governments at all. No, Your Honor. As I've tried to say, we're not disputing that that term indeed would include governments in some places in the Fair Crowd Reporting Act. And that would give effect to that definitional provision. So that is not the implication of our position. Our submission is that Congress did not intend to hold the federal government liable in running damages. You seem to be avoiding the Little Tucker Act position and concern. If the Little Tucker Act expressly waives sovereign immunity, then we're just looking for a money-mandating statute, right? You're quite right, Your Honor. But I do think that the considerations that I've been outlining to the Court and FCRA itself are also relevant to whether the statute is money-mandating in the meaning of the Little Tucker Act. And I think that's true under the White Mountain Apache case, which does indicate that the level of explicitness for determining whether a statute is money-mandating may well vary with the circumstances, and that the Supreme Court certainly does require in some contexts, in particular outside of the Indian trust context, a more explicit statement than is present in the Indian trust context. And so for all the reasons that I've been explaining to you— But the money-mandating requirement just requires a fair, objective interpretation, right? Quite right, Your Honor. Well, we've had district courts kind of go both ways on that. Why isn't that enough to show a fair interpretation? Well, I think it's not, Your Honor, because, again, in the White Mountain Apache case, I think the Supreme Court did make clear that in cases such as Testan and Sheehan, in order for there to be a fair interpretation, where you have the kind of substantial evidence that in the statute that Congress did not intend to impose liability on the United States, that you do require a more explicit statement. And I think that for all the reasons I've been discussing, there is not a fair interpretation of the statute under which Congress intended to impose liability, either under the Tucker Act or the Fair Credit Reporting Act. But more than that, Your Honor, on the little Tucker Act issue, I think that, quite apart from whether it's money-mandating in that sense, there are two principal reasons why the district court did not have jurisdiction under the little Tucker Act. First and foremost, FCRA has a distinctive jurisdictional provision, a specifically-vested jurisdiction in the district court. Or any other court of competence. Quite right, Your Honor. But that phrase, any other court of competent jurisdiction, cannot sensibly refer to the district court itself. It speaks of the district court, without regard to a matter of controversy, or any other court. And so other court, with respect, is referring to some other court than the district court itself. And so I think what the other court of competent jurisdiction language is doing is making clear that state courts might have jurisdiction over FCRA actions. And indeed, there is plenty of FCRA litigation that occurs in state courts. So that language is critical. None of this court's decision— But it certainly, by its language, encompasses the Court of Federal Claims, doesn't it? No, Your Honor, I don't think it does. And I think that would be inconsistent with the fact that the statute does— that Congress intended the district courts to have jurisdiction over all FCRA claims, without regard to a matter of controversy. Whereas, of course, the Court of Federal Claims would have jurisdiction only for claims of 10,000 or more. But more important— Well, isn't that what would determine whether they were of competent jurisdiction? Isn't that exactly what that would mean? Well, that's part of what it would mean, Your Honor. But I do think— First of all, I don't think it's tenable under this Court's precedence to draw a distinction between the Court of Federal Claims' jurisdiction over the Big Tucker Act and the district court's jurisdiction over the Little Tucker Act. And so if, as I've been trying to explain, the district court itself acting— sitting as—exercising Little Tucker Act jurisdiction could not be another court of competent jurisdiction. I don't think that you could— With my colleagues' permission, I'd like to move you on to the print issue. Is that all right? Okay. So why don't you address why the word print in the Fair Credit Reporting Act should not include computer screens, if you don't mind. I'd be happy to address that question. Let me just stress, Your Honor, that if the court does find that there is a waiver of sovereignty, you would urge the court to remand the case to the district court, which did not reach the— This is a question of law, a straightforward question of law over which there is no dispute of fact. You know—you use pay.gov. You know exactly what was on the receipt. They've agreed to all of that. This is teed up for the appellate court. It's a question of law, so we'll address it just in case we decide to get to it. Okay. Fair enough. Fair enough. I do think that the court sometimes remands questions of law to the district court. It's not addressed in the first instance, but I would certainly—I get the point. Your Honor, I think that Mr. Jacobs said the statute uses the phrase any receipt. Actually, that's not what it says. It says printed, any printed receipt. And with respect, Your Honors, the ordinary meaning of the term print, it encompasses tangible paper receipts. And if you ask your law clerk to go print out a case and give it to you, I don't think you would be satisfied if your law clerk brought in a portable electronic device that displayed the case on a computer screen. And if your law clerk did print out the case, there would be a little icon on the screen that said print. And what that—what clicking that icon would do, it would produce a paper reproduction of the case. And that would be what would be printed. Now— But this receipt came with instructions to print it out. Quite right, Your Honor. But the statute prescribes printing the receipt by the merchant that accepts credit cards. So the consumer printing out the receipt, him or herself, would not be— With instructions to print it. That's quite right, Your Honor. But the merchant itself, by sending an electronic confirmation, printed absolutely nothing, Your Honor. It would have been the consumer in that instance that would have printed something. I can do more harm with a computer display than I can do with a piece of paper any day. All I have to do is push the little forward button and send it to everybody in the world, and your credit is in real trouble, isn't it? So isn't everything that this Act is meant to protect in more jeopardy from your argument than it is from Mr. Jacobs' argument? With respect, Your Honor, no, I don't agree that that's the case. I think the Congress in this particular statute was addressing a specific problem. As Judge Newman pointed out, the legislative history indicates that Congress was concerned with this problem of dumpster diving, this sort of less sophisticated form of identity theft. Well, I'm suggesting an electronic form of dumpster diving that would do much more harm. Well, Your Honor, I think as an initial matter, the context that the statute has laid out in our brief and the use of the term does indicate that Congress had more limited scope. And there are other provisions of not only the Fair and Accurate Transactions Act of 2003, but to more generally address the problem of identity theft writ large. So there's no evidence that Congress was sort of trying to here create an all-purpose identity theft statute to reach identity theft in all of its manifest forms. There are other statutes that provide that function. What do we do with the fact that Webster's Dictionary from 2003, the relevant time period, has definition D is to display on surface as a computer screen for viewing under the word print in Webster's? What do we do with that? I agree with you. Most common usage of the word is printed out, meaning on your printer, not on your screen. But Webster's includes in that definitional section that the word print can be used to display on computers. Well, I think this is a secondary definition at best. And the cases of religion report books to the principal common meaning, first and foremost, to interpret a statute. Why don't we look at the meaning that is most consonant with the purpose underlying the creation of the statute? As Judge Rader suggested, the purpose is to prevent identity theft, and this would afford the greatest opportunity for abuse of identity theft if we were to allow electronic receipts to go into bad hands. Well, I disagree with you, Your Honor, that that was the purpose of the statute. I do think the legislative history of the statute indicates that Congress had a purpose that was more limited in scope. And if you look at the context of the statute, Your Honor, the statute is replete with references to sort of these face-to-face, concrete transactions, which reveal that Congress had in mind when it prescribed the merchant from printing any electronic receipt at the point of sale or transaction. I see that my time has expired, but I'd be happy to answer any further questions from the panel. Thank you very much, Mr. Whitaker. Mr. Jacobs, you have a little over two minutes remaining. Thank you, Your Honor. My brother just made a point of emphasis that the statute says that it applies to any printed receipt. And I'm sorry, that's not correct. The statute says no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. So, any receipt, again, we ought to be taking Congress at its word. Any receipt means any receipt, A. B, the point of sale, Judge Newman, I will submit, includes not only a fiscal place, but a temporal place at the time of the sale. It's hard to tell, really, trying to decipher what the legislative intent was, whether in fact they intended to limit what was happening to what was conspicuous at the time, which was before so much business was transacted by computer. Your Honor, it's absolutely true that there is more business conducted by computer today than there was in 2003, and there will be more next year than there was this year. But make no mistake about it, in 2003, e-commerce was a significant part of our economy. And that's why there was all this stuff by the FTC and the government saying you have to protect yourself. That was the purpose for this legislation in substantial part. So, I would submit, Your Honor, that we cannot say, well, that was 2003 and no one was looking at e-commerce. I believe e-commerce was a very important item at that time. Does pay.gov still do this? Does it still print this information, or have they stopped? They did for four or five more months after it was filed, and then they stopped. And that's a very important point, Your Honor. You know, in some of these cases, you've got to decide what to do, and maybe it means you're going to have to spend a million dollars sending out notices to people of this or that or the other. Do you have a final thought for us, Mr. Jacobs? I'm sorry? Do you have a final thought? Yes. It's a few key strokes, and they're done. Thank you very much. And, Your Honor, I promised you I would give you authority in Dodd v. United States 545 U.S. 353. The Seventh Circuit interpreted it as saying the meaning of the statute depends on what it says, not on what lawmakers foresaw. Thank you, Your Honor. Okay. Thank you.